The next case for argument is 24-1211, Pace v. Collins. Mr. Niles, nice to see you again. Please, while you're on. Thank you, Your Honors, and may it please the Court. The Veterans Court erred in this case because it misinterpreted the two-step protractive inquiry that 38 CFR sections 3.343a and 344a provide to US military veterans who have earned a total stabilized rating, when, in fact, 3.343a and 344a, they do have that two-step inquiry. The Veterans Court misinterpreted it as providing an unstructured, holistic... But even if you were right, didn't the Court below go through an analysis even under your view that you had to have the 2001 and the 2005 and reach the same conclusion nonetheless? No, Your Honor, it did not. And the reason is that the Board of Veterans' Appeals was looking at... It essentially collapsed the same unstructured, holistic analysis where instead of looking first and foremost, pursuant to 3.343a's first sentence, and whether there was examination showing material improvement, the Board of Veterans' Appeals jumped straight into assuming that there were examinations showing material improvement, then looking at all the facts and evidence of record to see whether that material improvement was sustainable. And so the Veterans Court then, in analyzing this under the wrong inquiry, erred and wouldn't... Well, what's the wrong inquiry where the second sentence of 3.343 says examination reports, blah, blah, blah, must be evaluated in conjunction with all the facts of the record and so forth? Yes, Your Honor, so the... There are two reasons then why 3.343 splits this up. And just syntactically, the first sentence of 3.343a... 3.43... When you say splits this up, what is the this? First of all, looking to an examination requiring material improvement. And so that first question then is not to a VA adjudicator, but instead takes that analysis out of the hands of a VA adjudicator and says that this is a rating... This context of rating reduction is one of medical inquiry. And before then it goes into the hands of a VA adjudicator, we're going to start with a medical professional requiring an examination showing material improvement. At that point, the second step of the analysis goes back to the VA adjudicator as further protection and also for administrative efficiency, we start with this examination report showing material improvement and then asking the adjudicator to say, well, looking at all of the facts in the record, is this examination report showing material improvement consistent then with that entirety of the evidence? So we're in CUE land. Yes, Your Honor. And I didn't see a lot of it discussed in your brief, but you've got to show this is outcome determinative, correct? In a typical case, yes, Your Honor. Because, however, the Veterans Court ended its analysis at was there error, the Veterans Court did not reach then what becomes a fact-found inquiry in terms of, is this an error that would have led to a manifestly different result? And so the Veterans Court's analysis in this case warrants... I don't understand. I don't remember exactly. They didn't say this is not CUE, it's not outcome determinative? Are you saying they didn't apply the CUE standard? Are you saying they didn't have to apply it or what? There are... Isn't the burden... I'm sorry, I'll interrupt one more time and then I'd like to talk. Which is, doesn't CUE place the burden on you to demonstrate that even if there were an error, it was outcome determinative? And did you do that? Yes, Your Honor, and yes, Your Honor. And so rating reductions are special. They are... The Veterans Court's Doffelmayer decision was correct to point out that VA regulation has specific limitations and is carefully circumscribed when the VA may take away... The veteran has already gone through the process with VA to establish as a total stabilized rating. And when that happens, then the... And speaking of when the VA has departed from those carefully circumscribed limitations, and its ability to reduce that rating, then the rating is void of an issue. And here, with the Board of Veterans' Appeals in its analysis of the 2006 rating officer's reduction, well, the rating officer's reduction did not go through this two-part process. So first, looking at the examination reports to see whether the examination reports show material improvement and then open up to the entirety of the record. That then, as Mr. Pace has argued before the Veterans Court, and this court is preserving the argument here, is outcome-determinative because it renders the rating reduction void of an issue. So are you saying that this case is an exception to the rules? I mean, all of our cases lay out these requirements, including that it has to be outcome-determinative. So you're saying, in this context, that requirement doesn't apply? No, Your Honor, not going that far. But rating reduction is a narrow and special context. And certainly, rating reductions, the context of showing clear and unmistakable error in the context of a rating reduction is somewhat easier for a movement than an appellant to do than showing clear and unmistakable error in the... Are there any other areas in Veterans' land where the CUA standard of outcome-determinative doesn't apply because there's this void ab initio theory hanging over us? And so I do want to be clear that I'm not saying that the outcome-determinative test does not apply to rating reductions. But rating reductions then would be in the same camp as severances. But instead, rather, showing Q remains a multi-step process, one step in which is to show that there was error. And then a successive, conceptually downstream element is whether there was that error. But for that error, there would have been a manifestly different outcome. And what the Veterans' Court did here is stop this analysis at that inquiry simply of error. And so what Mr. Pace is requesting of this court, set aside or reversed the Veterans' Court's legal error in mashing together into an unstructured holistic analysis what 3.343A and 344A have as a two-step inquiry, and then remand to the Veterans' Court to adjudicate the EQ entitlement to include then under this two-step inquiry whether then there is error and assuming yes, whether that error was outcome-determinative or would have led to a manifestly different outcome. So you're challenging the interpretation of that two-step process? Yes, Your Honor. Right? Okay, you're not challenging the outcome of that two-step process? And you're not bringing a Q claim before us? Mr. Pace, in the entirety of his case, is challenging that, but before this court, understanding the limitations and restriction on this court being able to address back down to industry. Right, the only argument you really have before us is the interpretation, interpretation of the regulations that set out that two-step process. That's correct, Your Honor. And if we agree with that, with the interpretation, then this case goes away. If this court agrees with the Veterans' Court's interpretation, mashing together. Because we can't, as you know, we can't reach a fact-based determination. That's correct, Your Honor. I just wanted to make sure I was correctly framing the. So there's only two things before us, interpretation of the regulations that outline that two-step process, and then the outcome of that application of that two-step process. You're not arguing before us that we have jurisdiction to rule as to the outcome, the factual, or even the application of the regulations to the facts. That's correct, Your Honor. And to the extent that the briefs are inconsistent with that, that was, there was a request in the alternative, or I guess in the first instance, assessed in this court for outright reversal. However, what Mr. Pace would be very happy with and believes that it is far, as far as this court can go, would be to reverse the legal error of the Veterans' Court and remand for that second question, then, to go to the Veterans' Court in the first instance, because it is bound up in facts. I wanna make sure I understand the two-step process as you see it. The first step is begin with the medical examinations, right? Yes, Your Honor. And is it your contention that the regulation requires you only get past that first step if there's at least two consecutive medical examinations that show improvement in the condition that led to the disability, right? Mostly, Your Honor. And the reason why I'm hedging on that is as initially briefed, this was requesting just to look at the very most recent and then no matter what the penultimately most recent examination said, that those two were it. And Mr. Pace does recognize that this is in the context of clear and unmistakable error and that he disagrees with the outcome of Collier, the Veterans' Court's Collier case. However, in the context of Q, that was binding to this particular case. And so, to more directly answer Your Honor's question, the analysis starts by looking at just the examination reports. And in a carnist context, where you have examination report, nothing in the middle, and then another examination report, that will be the most recent two examination reports. Where there is an examination report chronologically in the middle that shows material improvement or the examiner is saying, this person has really improved, but then the adjudicator comes back and says, I don't see sustained improvement yet. We're gonna order a future exam. Then at that point, in this context of Q challenging the 2006 decision, the analysis would go to what the examination reports, the July 2005 examination report, the 2001 examination report, and the 1998 examination report. Whether across them you see material improvement. At that point, if the answer is yes, then the analysis opens up to more that holistic second step. What that sounds like to me, I wanna make sure I got it right, is in this case, like it or not, the only issue before us is whether the first step based on the regulations can be clearly and unmistakably understood as limited to situations where those first, where those most two recent examinations shows sustained improvement. That is, you have a very, very narrow reading of what that step one is. That's what you're stuck with, because that's this case. Yes, Your Honor, and it's even more narrow than I understood Your Honor to articulate. I was with you until the word sustained, where the first inquiry is examination report showing material improvement. The second step would then be sustained, but otherwise I was with Your Honor. But the problem for you, I think, is your reading of the regulation is that we don't even get to step two unless that, those circumstances, except in the narrow circumstances where step one is satisfied, as you've just articulated. But that just doesn't seem to be what the regulation says. If that is a problem for Mr. Pace, then that is a problem for Mr. Pace, but that is his position, Your Honors. Why don't we hear from the government? Thank you, Your Honors. Thank you.  Good morning, Your Honors. May it please the Court. There are, I think, three, each independently sufficient hurdles that Mr. Pace cannot overcome in order to prevail in this appeal. The first is that because this is a Q claim, the Court cannot change the law on a Q claim. It has to be, Q has to be analyzed based on the law as it was understood at the time, i.e. the 2006 decision here, and there's no question that Collier was the law then and now. But what if we read the regulation hypothetically and say we're on all fours with Mr. Pace and we think the regulation requires X, Y, and Z? Isn't that sufficient? So I think it, so two things. One, and my third point will be that there is no way to read the regulation the way he wants to read the regulation, but even if hypothetically the Court were to, I think that would amount to changing the law here, that the law in place at the time of June 2006 was the Collier decision at the Veterans Court that was applied in this case, and therefore because this is a Q claim rather than a direct appeal, that's not something that the Court can correct in this appeal. It would have to be in a direct appeal challenge that the Court could then reverse the Veterans Court's interpretation of the regulation and remand for further development. The second problem that I think also goes to this question, which is the independently dispositive factual finding here, which is that even if the analysis were to proceed in the way that Mr. Pace advocates, i.e. that there would have to be a material improvement between the 2001 and 2005 examinations, the last two examinations in the record, the Board also held that a reasonable person could interpret those two examinations to see an improvement there, and that is at appendix. Is that what he's saying? Maybe, I thought he was saying the 2001 had to show material improvement too. You needed two exams to show material improvement. So, well, I think there's no question that the 2001 exam here showed material improvement, and that's also a Board finding that he improved from 1998 to 2001, and then the continuation in 2001 was to see whether or not it would be sustained, or whether that improvement was sort of temporal or episodic. Then, as I understood the briefing was, his argument was that you needed to see, in 2005, when they were actually doing the reduction, you had to see an improvement as compared to the penultimate examination, the 2001 examination. I think that's not correct as a matter of law, but in this case, the Board made a factual finding that even if you were limited to just those two, that there was, he showed further improvement from 2001 to 2005, or at least a reasonable person could make that conclusion. So you're saying even if you accept his interpretation of the regulation, it doesn't matter. It doesn't matter, exactly. And so that's the second reason why this can't be Q, because it can't possibly be outcome determinative. And then the third reason is just to touch on sort of the interpretation of the law. I think Mr. Pace got the benefit of sort of the most lenient reading of these regulations that still makes any kind of sense, and that goes to the figures that we put in our brief on page 24, which, you know, if we look at them, Mr. Pace in 1998, that was when he had symptoms, that's time point A in the context of this case. Mr. Pace actually had symptoms that demonstrated total social and occupational impairment necessary for the 100% rating. Time point B on the figure is the 2001 examination. That's when the RO observed that he had improved, and the question was, is he gonna be figure one or figure two? Is it going to be a temporary improvement, and it's sort of an episodic, he had a good day, we caught him on a good day, or is it going to be sustained improvement, and therefore it's a new plateau where we have to reduce the ratings. And so time point C was the 2005 examination where they looked back and saw, yes, in fact, it has been sustained improvement, we have a new plateau at the 50%, and that's when they finally reduced his rating. Do you have any view on this theory about void ab initio? I mean, he made the narrow point in terms of why this would be outcome determinative. So accepting a lot of what he said, which I know you clearly disagree with, is that still, is that a viable legal theory when we're talking about these reductions? Well, I think the sort of the critical step that he's missing is before you get to the void ab initio, which is that, in fact, if the board were to undertake the analysis that he's claiming was necessary, that they would have concluded that a reduction in 2006 was improper, and then it would be potentially void ab initio, as he says. But I think the problem that he has here, given the board's factual finding that a reasonable person, even undertaking the limited comparison that he says was the legally required comparison, would still, could have concluded and saw improvement there, which means that a reduction could have still been appropriate in 2006, even under his reading, sort of how he thinks these regulations should be applied, and therefore, then it wouldn't be void ab initio, because it could still be proper. So I think the, he sort of, his outcome determinative problem isn't a step earlier in the analysis, and so that just doesn't, that never comes into effect. Can I just ask you, I may be wrong on this, and I can't recall this coming up in an earlier case, but you made the point earlier that on a CUE, he'll lose for a number of reasons, but one of those reasons was that the law in 90, in the earlier time, was the Collier Veterans case, and we had, so is it true that if we've not analyzed the regulatory regime, and if we now say the regulation is absolutely on all fours with what Mr. Pace says, that we would, we still wouldn't be a CUE because the law then hadn't been decided? I just. I think that's right, Your Honor, and I think in particular, because there was a Veterans Court decision on that issue, so there was a legal interpretation in effect, and that's, I think, what George confirmed at the Supreme Court a few terms ago, that even if subsequently, you know, obviously a higher court changes their mind and says, no, you botched it in 1992, Veterans Court, and we just didn't have an opportunity to correct you until now, I think that has to wait for the court to address that on a direct appeal. I don't think they can do that on CUE. That's interesting. I mean, I just don't think I've confronted that issue directly. Your position is we can dismiss or affirm. What would the dismissal analysis look like? I think because the opening brief really doesn't tangle with the CUE standard at all, and so, you know, I don't really know how the court thinks about that. If the appellant sort of does not acknowledge the standard under which his appeal has to proceed, whether that would be a dismissal or affirmance. So what do you mean by that? They should have alleged each one of the standards, the CUE standards, and gone through each one. They should have done the CUE analysis. I think the opening brief really reads as if this is a direct appeal rather than a CUE appeal. Well, I get his point, though. I take his point, which is that if his theory is void ab initio, and we accept that, at least it's the argument he's making, that he's saying if he's right on the law, then that reduction goes away, and so that's the beginning and end of the outcome determinative standard, so. And we're perfectly happy for the court to affirm rather than dismiss. I think that's not a... However the court wants to dispose of it. And of course, there's this, we have a long plate of what to do, but the government's position is that he's wrong under the interpretation of the regulation, right? Yeah, yes, yes. I think that this fails as CUE and also would fail as a direct appeal. Thank you. If it's a failure of CUE, then we dismiss. We would have to dismiss a case, correct? Again, I think as between a dismissal and an affirmance, that's sort of all roads lead to Rome. Thank you. Please proceed. Thank you, Your Honor. Two quick points, and actually before I get there, of course, the result that... I'm sorry, I'm having a hard time. Oh, I'm sorry. The result that Mr. Pace, of course, asks this court to reach in this appeal is to vacate or reverse, set aside the veterans' course legal error and remand rather than affirm or dismiss. I do want to touch upon what I believe is my friend's, what she was referring to as supposedly a board factual finding here. I believe what she was referring to is at Appendix 22. At Appendix 22, the board said a reasonable person could have found a sustained material improvement under the ordinary conditions of life in comparing the examinations. And again, that sustained leaking into the analysis, and by that point, the board's decision very clear. The board's looking beyond the examinations themselves to the overarching factual records. So jumping just as the veterans' court did into this holistic, or what Mr. Pace posits is this step two analysis, overlooking then just report to report. You have examinations showing material improvement. Mr. Pace, the briefing is much more articulate and sophisticated I could do here in a minute 45 in terms of why then going through 3.343A, the first sentence without examination showing material improvement, and then the second sentence starting within a second step where a sentence wants the analysis to include both an examination report and the overall factual record. It says so, where the sentence does not, it does not. And so for all of the reasons that Mr. Pace has briefed and that I have mentioned this morning, Mr. Pace respectfully requests that this court reverse or set aside the veterans' court's legal error in assessing the board's Q determination, and then remand for the veterans' court to re-adjudicate Mr. Pace's entitlement to remove from that board error in connection with his Q claim. Thank you. We thank both sides, and the case is submitted.